<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY MARSHIE, | |
| Plaintiff, | Civil Action No. 13-6593 (ES) |
| v. | OPINION |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Plaintiff Mary Marshie seeking review of an Administrative Law Judge's decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**I.      Background**

Marshie is a fifty-six-year-old woman who alleges disability as of November 1, 2006. (D.E. No. 9, Administrative Record ("Tr.") at 158). On January 14, 2010, Marshie applied for DIB. (*Id.* at 141-7). Her application was denied initially on June 28, 2010, and again on reconsideration on October 5, 2010. (*Id.* at 84-85). Marshie then filed for a hearing before an ALJ, which was held on November 16, 2011 before ALJ Donna Krappa ("ALJ Krappa" or "the ALJ"). (*Id.* at 43-82). On July 24, 2012, ALJ Krappa issued an unfavorable decision for Marshie.

(*Id.* at 26-38). In the decision, ALJ Krappa found that Marshie suffered from the following severe impairments: bipolar disorder, anxiety disorder, alcohol abuse, and substance abuse. (*Id.* at 29). While ALJ Krappa initially found that Marshie was disabled due to the effects of those impairments, the ALJ ultimately concluded that, if Marshie were to stop the alcohol and substance abuse, the remaining impairments would not constitute a disability under the Social Security Act. (*Id.* at 38)

Marshie requested a review of the ALJ's decision on August 25, 2012. (*Id.* at 21). The Appeals Council of the Social Security Administration denied her appeal on September 25, 2013. (*Id.* at 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Defendant" or "the Commissioner"). *See* 20 C.F.R. § 404.981.

On October 31, 2013, Marshie appealed the Commissioner's decision by filing the Complaint with this Court. (D.E. No. 1, Complaint ("Compl.")). The administrative record was filed on November 11, 2014, (D.E. No. 9), and the parties briefed the issues raised by Marshie's appeal, (D.E. No. 13, Brief in Support of Plaintiff Mary Marshie ("Pl. Mov. Br."); D.E. No. 19, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The matter is now ripe for resolution.

## II. Legal Standards

### A. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Standard for Awarding Benefits

To be eligible for DIB under Title II of the Social Security Act, a claimant must establish that he or she is disabled as defined by the Act.  *See* 42 U.S.C. § 423.  Additionally, claimants seeking DIB must satisfy the insured status requirements set forth in § 423(c).

An individual is deemed disabled under Title II if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  The individual's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4). If at any point in this sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the evaluation stops. *Id.* Proper procedure also requires that the Commissioner determine the individual's residual functioning capacity ("RFC") before proceeding to step four. 20 C.F.R. § 404.1520(e), 416.920(e). RFC is defined as the most the individual is capable of doing despite her limitations, including those that are not severe, and it is based on all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).

### C.     Standards for Determining Materiality of Drug Addiction or Alcoholism

The Contract with America Advancement Act of 1996 amended the Social Security Act to preclude an award of DIB if "drug addiction or alcoholism" ("DAA")[1] would be "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *see also* 20 C.F.R. §§ 404.1535, 416.935.

In determining whether DAA is a material contributing factor to an individual's disability, the "key factor" is "whether we would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). To make this determination, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(2). The ALJ must then determine whether any or all of the claimant's remaining limitations would be disabling. *Id.*

Social Security Ruling 13-2p sets out the procedure used by ALJs in determining DAA materiality. SSR 13-2p, 2013 WL 621536 at *2. First, the ALJ will "apply the sequential evaluation process to show how the claimant is disabled." *Id.* Then, the ALJ will "apply the sequential evaluation process a second time to document [DAA] materiality . . . ." *Id.* As with every other step of the disability determination, the ALJ's DAA analysis is governed by the substantial evidence standard. *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 157 (3d Cir. 2013).

### III.   ALJ Krappa's Decision

To determine Marshie's eligibility for DIB, ALJ Krappa conducted the five-step evaluation process required by 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). (Tr. at 27-38). While the

---

[1] Social Security Ruling 13-2p notes that, "[a]lthough the terms 'drug addiction' and 'alcoholism' are medically outdated, we continue to use the terms because they are used in the Act." SSR 13-2p, 2013 WL 621536, at *3.

5

ALJ initially determined that Marshie was disabled, the ALJ also found evidence of DAA in the record. (*Id.* at 29). Because of this, the ALJ conducted the five-step analysis a second time to control for the effects of DAA, finding that DAA was a material contributing factor to Marshie's disability. (*Id.* at 32-38). Thus, the ALJ ultimately concluded that Marshie was not disabled under the Social Security Act. (*Id.* at 38).

At step one, ALJ Krappa determined that Marshie was not engaged in substantial gainful activity since the alleged onset date of November 1, 2006. (*Id.* at 29). At step two, ALJ Krappa determined that Marshie suffered from the following severe impairments: bipolar disorder, anxiety disorder, alcohol abuse (continuous), and substance abuse (recurrent). (*Id.*). The ALJ determined that Marshie also suffered from mild chronic obstructive pulmonary disease. (*Id.*). The ALJ observed that these impairments significantly limit Marshie's ability to perform basic work activities. (*Id.*).

At step three, ALJ Krappa determined that Marshie did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. §§ 404.1520(c) ("the Listings").[2] (*Id.*). In her analysis, the ALJ focused on whether Paragraph B criteria of the Listings were met.[3] (*Id.*). To that effect, the ALJ determined that Marshie had moderate restriction in activities of daily living; moderate difficulties in social functioning; and moderate difficulties with regard to concentration. (*Id.* at 29-30). Further, the ALJ found that Marshie experienced four or more episodes of decompensation. (*Id.* at 30).

---

[2] The Listings define impairments which would prevent an adult, regardless of his age, education, or work experience, from performing not just substantial gainful activity, but any gainful activity. *See* 20 C.F.R. § 416.925.

[3] The criteria of Paragraph B are met if an individual's impairments result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Part 404, Subpart P. A marked limitation means more than moderate but less than extreme. *Id.*

In the RFC analysis conducted at step four, the ALJ concluded that Marshie was able to perform a full range of work at all exertional levels, albeit with limitations placed on the environmental and mental demands of the work. (*Id.*). In support, the ALJ states that she accorded substantial weight to a report entitled "Mental Impairment Questionnaire (RFC and Listings)" (the "Mental Impairment Questionnaire" or "MIQ"), which was submitted by Marshie's treating psychiatrist Dr. Marina Galea. (*Id.* at 31). In the MIQ, Dr. Galea specifically rated Marshie according to the four functional limitations of Paragraph B. (*Id.*). The report concluded that Marshie suffered from "marked" difficulties in daily living; "extreme" difficulty in maintaining social functioning; "constant" deficiencies in concentration, persistence, or pace; repeated episodes of deterioration; and more than three absences from work per month. (*Id.* at 31, 296).

At step four, the ALJ found that Marshie would be unable to perform past relevant work as a waitress, stating that Marshie's "drug and alcohol decompensation and her limitations for only unskilled work preclude her ability to perform this job." (*Id.* at 31). At step five, the ALJ determined that there were no jobs available in significant numbers in the national economy which Marshie could perform. (*Id.* at 32). In arriving at this conclusion, the ALJ consulted with a vocational expert and adopted the opinion that, given Marshie's age, education, work experience, and RFC, she would be unable to successfully adjust to the demands of a new, widely available job. (*Id.*).

Because the ALJ found Marshie's impairments to include DAA, the ALJ proceeded to conduct the five-step disability analysis a second time to determine whether DAA was a "material contributing factor" to Marshie's disability. (*Id.* at 32-38).

At step three (as repeated), ALJ Krappa determined that, absent DAA, Marshie would still not have an impairment or combination of impairments which meets or medically equals a relevant

Listing. (*Id.* at 32). The results of the ALJ's second step three analysis diverged from her initial review only in the determination that, absent DAA, Marshie would not experience any episodes of decompensation. In support of this finding, the ALJ reasoned that "all of the claimant's hospitalizations related to alcohol intoxication; this includes even an apparent suicide attempt in October 2009." (*Id.* at 33).

In the RFC analysis (as repeated), the ALJ concluded that Marshie would have the RFC to perform a full range of work at all exertional levels, with restrictions placed on the environmental and mental demands of her work. (*Id.* at 34). At step four (as repeated), ALJ Krappa found that if Marshie stopped the substance abuse, she would be unable to perform past relevant work. (*Id.* at 37). At step five (as repeated), ALJ Krappa again consulted the vocational expert and adopted the conclusion that, if Marshie stopped the substance abuse, there would be a significant number of jobs in the national economy which she could perform. (*Id.*). Based on these findings, the ALJ ultimately concluded that Marshie was not disabled under the Social Security Act. (*Id.* at 38).

**IV. Discussion**

Plaintiff alleges that ALJ Krappa's findings are not based on substantial evidence for four reasons. Specifically, Plaintiff alleges that (1) ALJ Krappa "improperly evaluated the medical evidence" at step three in concluding that Plaintiff failed to meet the criteria of a listed impairment, (Pl. Mov. Br. at 22); (2) ALJ Krappa improperly weighed the credibility of Plaintiff's own testimony regarding her symptoms, (*id.* at 26); (3) ALJ Krappa failed to consider all the relevant evidence in her RFC analysis, (*id.* at 31); and (4) ALJ Krappa lacked substantial evidence in concluding that, absent DAA, Plaintiff would not experience any episodes of decompensation. (*id.* at 26). The Court will address each argument in turn.

8

### A. The ALJ's Consideration of Medical Opinion Evidence at Step Three

Plaintiff argues that ALJ Krappa failed to properly account for all of the relevant medical evidence at step three of the disability analysis. Defendant responds by arguing that any errors on the part of the ALJ at step three of the initial disability analysis were harmless, as the ALJ ultimately re-conducted those steps to determine whether Plaintiff would remain disabled without the effects of DAA. (Def. Opp. Br. at 8).

The Court agrees with Defendant that any error in the *initial* step three analysis constitutes harmless error. An ALJ's error is harmless, and therefore does not warrant remand, where the error "would not have affected the ALJ's ultimate decision." *Ortiz v. Astrue*, No. 10-03538, 2011 WL 5190450, at *18 n.3 (D.N.J. Oct. 28, 2011); *see also Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006).

However, because the ALJ cited and weighed similar record evidence as part of the *subsequent* disability analysis, the court will address the ALJ's treatment of this evidence with respect to both sequential disability analyses.

#### 1. Dr. Galea's Mental Impairment Questionnaire

Regarding the ALJ's consideration of medical evidence at step three, Plaintiff takes issue primarily with the ALJ's treatment of a portion of Dr. Galea's Mental Impairment Questionnaire in which the psychiatrist made findings suggesting that Plaintiff met or exceeded the criteria of Paragraph B of the Listings. (Pl. Mov. Br. at 25; Tr. at 296-97). Plaintiff argues that the ALJ must have improperly disregarded the report because the ALJ ultimately concluded that Plaintiff did not meet the criteria of Paragraph B, even though the favorable MIQ was accorded "great weight" later in the initial disability analysis. (Pl. Mov. Br. at 25).

The Third Circuit has held that "[t]reating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (internal citations and quotations omitted); *see also* SSR 96-2p, 1996 WL 374188 at *2. "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. Thus, while the ALJ may weigh the probative value of a physician's medical opinion, he must still "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000); *see also Plummer*, 186 F.3d at 429 (noting that an ALJ "cannot reject evidence for no reason or for the wrong reason"). In crediting or rejecting such evidence at step three, an ALJ need not discuss in her opinion "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching her conclusions, *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

As noted above, the MIQ concluded that Marshie's mental disabilities met the requirements of Paragraph B of the listings. (Tr. at 296-97). While the ALJ accorded this medical opinion "great weight" in considering step four, (*id.* at 31), the ALJ nevertheless concluded at step three that Marshie's disabilities did not meet the criteria of Paragraph B. (*Id.* at 29-30). Had the ALJ treated Dr. Galea's MIQ consistently across steps three and four, the ALJ would necessarily have found that Marshie met the Paragraph B criteria at step three, and was thus disabled.[4] Because

---

[4] District courts have held that psychiatrists' MIQ assessments relating to Paragraph B criteria are indeed relevant to an ALJ's conclusions at step three. *See, e.g.*, *Gorr-Brasile v. Comm'r of Soc. Sec.*, No. 08-737, 2009 WL 650738, at *7 (W.D. Pa. Mar. 12, 2009) (holding that a treating

ALJ Krappa's step three conclusion runs contrary to conclusion of the MIQ, however, it appears that little or no weight was in fact accorded to the MIQ at that step.

Because ALJ Krappa disregarded the MIQ at step three, but provided no explanation for doing so, the ALJ failed *Burnett*'s requirement to "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett* 220 F.3d at 121. Thus, the ALJ's opinion does not allow for a finding that the ALJ actually considered the relevant portion of that report at step three. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

However, upon finding evidence of DAA in the initial disability analysis, the ALJ was required to re-conduct each step of the analysis regardless of whether Plaintiff was initially found disabled at step three or five. S*ee* SSR 13-2p, 2013 WL 621536, at *14. Because the ALJ found evidence of DAA, and subsequently re-conducted step three in light of the DAA evidence, the ALJ's failure to properly consider all relevant evidence at the initial step three could not have affected her ultimate conclusion. Therefore, the Court finds the above error to be harmless. *See Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (affirming administrative decision where ALJ's failure to consider relevant evidence at step three did not affect the ALJ's ultimate conclusion).

In the second RFC analysis, the ALJ stated that she provided Dr. Galea's MIQ responses "little weight," (Tr. at 36-37), noting that they were inconsistent with the fact that Dr. Galea "rated the claimant's global assessment of function (GAF) as 60, which is consistent with moderate

---

physician's assessment of Paragraph B criteria in an MIQ supported the ALJ's determination at step three). Thus, while the ALJ need not explicitly discuss the MIQ at step three, *Hur*, 94 F. App'x at 133, she was nevertheless required to take the report into account at that portion of the disability analysis, s*ee Burnett*, 220 F.3d at 121-22 (remanding where ALJ "failed to consider all pertinent evidence" in arriving at conclusion).

symptoms," (*id.* at 35). The ALJ also cited Dr. Galea's finding that, while Marshie's concentration was severely diminished and her memory impaired, she was also "cooperative" and "well oriented." (*Id.*). The ALJ further noted that, when not abusing alcohol, Plaintiff is capable of simple tasks like caring for pets, preparing her daughter for school, and handling personal needs (among other activities). (*Id.* at 36). Later in the same RFC analysis, the ALJ stated that, "when the claimant is not abusing alcohol and taking prescribed medication, her mood is stable and there is no evidence of psychosis. While she does continue with symptoms of depression, anxiety, and decreased concentration, the evidence does not suggest that it is at a marked level." (*Id.* at 37).

This recitation of relevant evidence by the ALJ adequately supports her decision to grant little weight to the treating psychiatrist's MIQ. *See Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (affirming ALJ's decision to grant little weight to report by claimant's treating physician, where physician's opinion was inconsistent with his own notes, claimant's activities of daily living, and objective clinical evidence). Further, unlike the ALJ's treatment of the MIQ during the initial disability analysis, her consideration of the MIQ across step three and four of the DAA analysis is internally consistent—the ALJ's conclusion that Plaintiff failed to meet the criteria of Paragraph B comports with the fact that "little weight" was provided to the MIQ. Thus, if the DAA analysis is read as a whole, it is clear that the ALJ adequately supported her treatment of Dr. Galea's MIQ at each step. *See Jones*, 364 F.3d at 505. Therefore, the Court affirms the ALJ's consideration of Dr. Galea's medical report throughout the DAA analysis. *See id*.

### 2. Evaluation of Other Medical Evidence

In further support of her argument that ALJ Krappa failed to meet the substantial evidence standard at step three, Plaintiff recites additional record evidence relevant to the severity of her mental impairments. (Pl. Mov. Br. 22-26). Plaintiff asserts that, if this evidence had been properly

considered as a whole, substantial evidence would have supported a finding that Plaintiff was in fact disabled under the Social Security Act. (*Id.* at 25).

Significantly, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)). Where the ALJ meets this requirement, a reviewing court may not set the administrative decision aside, even if the court would have decided the matter differently. *Id.*

Here, Plaintiff notes that Dr. Galea reported "moods swings, severe depression, insomnia, impulsivity, and suicidal thoughts." (Pl. Mov. Br. at 23; Tr. at 290). Dr. Galea further reported that Plaintiff would miss more than three days of work per month in her current condition, and had diminished capacity to conduct many tasks relevant to maintaining a steady job. (Tr. at 294-9). Plaintiff also cites the report of consulting psychiatrist Lynn Laucik, who found Plaintiff to exhibit "difficulty concentrating, lack of interest, and sadness," among other symptoms. (*Id.* at 238-241).

However, this evidence appears to have been explicitly considered by the ALJ in arriving at her conclusion. For example, the ALJ states that "[w]hile it is acknowledged that the claimant suffers from depression and anxiety disorders with symptoms of decreased concentration, the evidence establishes that her condition is controlled when she takes prescribed psychotropic medication regularly." (*Id.* at 36). The ALJ also acknowledges that "hospital records and treatment records do establish severe depressive, anxiety, and substance abuse disorders." (*Id.* at 37). Thus, while Plaintiff may be correct in noting that evidence exists which could support a different conclusion, it is apparent from the ALJ's opinion that she considered the sum of this evidence before concluding that Plaintiff was not disabled. Because of this, the Court finds that ALJ Krappa has met her requirement to consider the evidence pointed out by Plaintiff in her brief.

13

*See Hartranft*, 181 F.3d at 360.  Accordingly, the Court affirms the ALJ's opinion with respect to its consideration of this evidence.  *See id*.

### B. The ALJ's Evaluation of Plaintiff's Credibility

Next, Plaintiff argues that the ALJ erred in failing to properly credit Marshie's own testimony regarding her symptoms. (Pl. Mov. Br. at 27-29).  Specifically, Plaintiff argues that the ALJ employed circular logic in finding that Plaintiff lacked credibility simply because her testimony conflicted with the ALJ's own findings.  (*Id.*).

The Third Circuit has held that "while a claimant's subjective complaints must be given serious consideration, they must also be supported by medical evidence."  *Martin*, 547 F. App'x at 158.  Thus, the ALJ "is not obliged to accept without question the credibility of such subjective evidence."  *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)).  Rather, an ALJ "may reject a claimant's subjective complaints when the ALJ specif[ies] his reasons for rejecting the[ ] claims and support[s] his conclusion with medical evidence in the record."  *Martin*, 547 F. App'x at 158 (internal quotation omitted).  And finally, "[c]ourts generally afford the ALJ's credibility assessment great deference, because the ALJ is in the best position to evaluate the demeanor and attitude of the plaintiff."  *Nihat Bek v. Comm'r of Soc. Sec.*, No. 14-02694, 2015 WL 3461067, at *4 (D.N.J. June 1, 2015).

Here, ALJ Krappa clearly laid out her reasons for discrediting Plaintiff's testimony, and cited objective medical evidence in support.  In determining that Plaintiff lacked credibility, the ALJ noted that

> [a]lthough the claimant testified at the hearing that she was not drinking and later testified that she sometimes has relapses for a day and has two or three drinks, it is clear that the claimant continues to "actively use" alcohol. Specifically, hospital records submitted after the hearing (which was held in November 2011) indicate that the claimant was hospitalized from December 4, 2011 to December 9, 2011 due to alcohol dependence (continuous) and withdrawal.

14

(Tr. at 36). This statement, along with additional discussion of Plaintiff's relevant testimony, meets the ALJ's requirement to consider Plaintiff's testimony and support any credibility determinations with substantial evidence. *See Martin*, 547 F. App'x at 159 (affirming ALJ's determination that Plaintiff was not credible where her testimony "d[id] not comport with the weight of the evidence of the file"). Accordingly, the Court affirms the ALJ's determination of Marshie's credibility.

## C. Other Arguments

Plaintiff argues that during the RFC analysis, the ALJ improperly determined that Plaintiff retained the residual capacity to conduct a full range of work at all exertional levels. However, through step four of each sequential disability analysis, Plaintiff bears the burden of putting forth evidence supporting a disability finding. *See* 42 U.S.C. § 423(d)(5). Here, Plaintiff's argument fails because she points to no evidence in the record that supports a finding of any exertional limitation at the RFC phase.[5]

Plaintiff also argues that the ALJ did not properly assess the Mental Residual Functional Capacity ("MRFC") form filled out by state agency psychiatric consultant Dr. E. Charles. Specifically, Plaintiff points to the MRFC form's section I (labeled "summary conclusions") in which Dr. Charles checked off a box indicating that Plaintiff was "moderately limited" in her ability to complete a normal eight-hour workday. (Pl. Br. at 26-27; Tr. at 274). Plaintiff claims

---

[5] While Plaintiff points to medical reports from Summit Medical Group indicating several physical impairments, these reports were created almost a year after the ALJ rendered her opinion denying Plaintiff's DIB application. (Tr. at 8-14). Thus, this evidence is not properly before the Court, and will not be considered in this appeal. *See Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (requiring that "new evidence [submitted after the ALJ has rendered her opinion] relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").

that Dr. Charles's conclusion would support an administrative finding that Plaintiff was not capable of work, and thus was disabled under the Social Security Act. (Pl. Mov. Br. at 31).

However, section I of the MRFC form "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010). Because of this, courts in this circuit have held that psychiatrists' findings contained in section I of these forms "may be assigned little or no weight." *Id.* (collecting cases). Therefore, the Court concludes that the ALJ did not err by failing to explicitly consider Dr. Charles's section I findings during her RFC analysis. *See Smith v. Astrue*, No. 08-2875, 2009 WL 1372536, at *5 (D.N.J. May 15, 2009) *aff'd sub nom. Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632 (3d Cir. 2010) (finding that ALJ did not err by failing to consider psychiatrist's findings contained in section I of an MRFC form).

Finally, Plaintiff argues that ALJ Krappa lacked substantial evidence in concluding that, absent DAA, Plaintiff would not experience any episodes of decompensation. (Pl. Mov. Br. at 26). However, the ALJ adequately supports this finding with objective and other medical evidence on the record. For example, ALJ Krappa noted at several points in her analysis that all of Plaintiff's hospitalizations were associated predominantly with alcohol and other substance abuse. (Tr. at 33, 36). Additionally, hospital discharge notes from at least one such incident indicated that upon release, Plaintiff was only "mildly depressed" and her psychosis had been resolved. (*Id.* at 36). The ALJ also noted that, when not abusing drugs or alcohol, Plaintiff is capable of simple daily tasks such as preparing her daughter for school and caring for pets. (*Id.*). Such evidence is sufficient to meet the substantial evidence requirement at this phase. *See McGill v. Comm'r of Soc. Sec.*, 288 F. App'x 50, 52 (3d Cir. 2008) (affirming ALJ's finding of DAA materiality where

16

vast majority of claimant's hospitalizations were alcohol related, and hospital discharge notes indicated improvement of claimant's mental condition).

## V.     Conclusion

For the foregoing reasons, the Court AFFIRMS ALJ Krappa's decision. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
